## HILLS v. HAMILTON WATCH CO.

(District Court, E. D. Pennsylvania.   January 9, 1918.)

### No. 1471.

1. PATENTS ⬤⟶328—VALIDITY AND INFRINGEMENT—WATCH BARREL.

The Thalhofer patent, No. 672,655, for an improved watch barrel, designed, as stated by the patentee, to improve the mechanism in simplicity of construction and the facility with which the parts may be disassembled, in such respects discloses utility and invention, but is limited to the specific structure shown, and, as so limited, *held* not infringed.

2. PATENTS ⬤⟶312(3)—INFRINGEMENT—EVIDENCE.

When the question of infringement is in doubt, the fact that the patent is a mere paper patent may turn the scale against infringement.

3. PATENTS ⬤⟶312(3)—SUIT FOR INFRINGEMENT—RIGHT TO RELIEF IN EQUITY.

The facts that complainant in an infringement suit bought the patent as a part of the assets of an insolvent corporation, that it was never made use of, that defendant had been making the alleged infringing device for seven or eight years, and had built up a valuable trade therein before complainant brought suit, and that he did not bring it to a hearing until the end of the patent term, are sufficient grounds for denying him relief in equity, by injunction and accounting.

In Equity.   Suit by Edward R. Hills against the Hamilton Watch Company.   On final hearing.   Decree dismissing bill.

S. W. David and Max W. Zabel, both of Chicago, Ill., and Cyrus N. Anderson, of Philadelphia, Pa., for plaintiff.

Wm. Steell Jackson, of Philadelphia, Pa., and Charles J. Williamson, of Washington, D. C., for defendant.

DICKINSON, District Judge.   The conclusions reached in this case are:

1. The patent of the plaintiff is valid (thus including a finding of utility), but the claims, in view of the prior art, are to be so read as to restrict all proprietary rights to the specific structure described.

2. The structural differences between the defendant's device and that described in plaintiff's patent are so real, or at least the doubt of their being merely formal and the differences being only in the use of mechanical equivalents, is so great, as, in view of the patent of the plaintiff being a mere paper patent, to justify a finding of no infringement.

3. In any event, in view of all the equitable considerations involved, the interference of a chancellor is not justified.

These are relatively short texts for a very long sermon.   It would facilitate the trial and final disposition of cases in patent litigation if counsel were more fully in accord with the spirit of the new equity rules, requiring trials to be had as at law, by doing, as trial lawyers have found it well to do, avoid contesting every possible controvertible point, and select what they believe to be the turning point of the case.   Litigants and their counsel, however, who in good faith and with earnestness present for discussion features of the case which they

deem of importance, have a right to evidence that these features have all received consideration, even at the expense of what would otherwise give undue volume to the record. These comments are called forth by the fact that every possible point, even the question of title to the patent, was here in controversy at some time or other. This was doubtless due to the attitude of the parties toward each other, and was unavoidable.

[1] The controversy, as presented by the plaintiff, is over the infringement of letters patent No. 672,655, issued April 23, 1901, to Joseph Thalhofer, for an improved watch barrel, the title to which has passed to the plaintiff by assignment. The answer presents issues which raise the question of validity, as well as infringement, and also the right of the plaintiff to the equitable remedies asked to be allowed. The rights granted patentee were never asserted through the manufacture or the making of any commercial use of the patented device or mechanism. The patent, viewed in the light of this fact alone, may be characterized as a paper patent. The significance of the fact of nonuse is sought to be explained away, and the justness of the characterization of plaintiff's patent as a mere paper patent to be denied by the plaintiff, by a statement of the excusing facts that the patentee died shortly after the grant of the patent, leaving no estate to supply the administrator with funds to push the patent, and he was in consequence obliged to dispose of it, and that the purchasing company, by reason of financial and other business difficulties, had not been able to either manufacture watches embodying this invention or to make any commercial use of it as a mechanism, and that the plaintiff had succeeded to the title to the patent through a purchase of other assets of the company.

The defendant, on the other hand, draws from the fact of this nonuse, and other features which enter into the present controversy, the inference that the nonuse was due to the worthlessness of the patent, because of its recognized invalidity by reason (among others) of the inutility of the device as described in the application and claims. The scope of the rights of the plaintiff, with which we would be impressed as prima facie springing from the grant of letters, is restricted by a general understanding of the state of the prior art and of the experiences of the application in the Patent Office as disclosed by the file wrapper.

The patented device, although constituting an important part of the works of a watch, relates to one part only of the works, being that part which is directly associated with and under control of the mainspring. The part of the works of a watch which incloses or within which the mainspring is confined is called the "barrel." The motive force which drives the machinery of the watch is the unwinding of the mainspring, and this barrel rotates as the spring unwinds. To enable the mainspring to supply this power, it must be wound up, and this is accomplished by the inside end of the metal ribbon, which constitutes the mainspring, being connected with a mechanism which is actuated by the stem winder. By the means indicated the mainspring is wound up and the end of it held to its position, with the re-

sult that the mainspring in its unwinding rotates the barrel and what has in this record been called the integral main wheel.

The experience of every one who carries a watch has brought home to him knowledge of the fact that the parts of the watch mechanism referred to require frequent attention, and prepares him to give ready belief to the necessity of having them so made as that the parts may be readily disassembled and reassembled to facilitate the cleaning of the watch and its repair, because of a broken mainspring or otherwise. This thought has an important bearing upon the common sense of the claim to inventive merit which is put forth on behalf of the plaintiff, and invites our attention to what advance the inventor himself thought he had made over the prior art, and to what limits, if any, he had set to his claim. The application very clearly discloses this. He makes no claim to novelty, and none to an increase in the efficiency of his device over others known to the art, beyond what was involved in the gain in simplicity of construction and in the facility with which the parts of the watch, as he would have it constructed, were disassembled. He frankly acknowledges the similarity of his construction with the constructions already in use, and asserts no difference in results beyond a difference in degree in operative efficiency. There is an admission of simplicity of construction and facility in the taking apart and putting together of the mechanism in the then known constructions; but the inventor claims for his own a greater simplicity and a greater facility, and that only. In order to accomplish this relative value in results, he describes what he claims to be a somewhat different, and to this extent novel, construction of special parts of the watch, and a somewhat different, and to this extent new, arrangement of parts, or, to quote his own language:

"To this end [i. e., in order to get greater simplicity and increased facility] my invention consists in the novel construction, arrangement, and combination of the parts" shown and described in the application.

The impression is thus made, which the very able and forcible argument addressed to us by counsel for the plaintiff has not removed, that the language of the claims must be read with the general thought above outlined in mind, and that this results in narrowing the claims to a special form of mechanism meaning or a special combination of mechanisms. This truth should not blind us, however, to the other truth, an analogue for which we may borrow from the military art. When the fighting is in the open and over a wide terrain, a gain of miles may be of no real value, while the gain of a few yards in trench fighting may be of the utmost, and indeed of vital, importance. So in every highly developed art, any advance, even if it be one merely in simplicity or cost of construction, as it becomes increasingly difficult, takes on an increasing value.

The impression thus made by reading the application is deepened by a perusal of the file wrapper. Some only of the prior art devices were cited for reference in the Patent Office. None of these were found to deny the right of the applicant to his patent, when his claims had been brought within the limits to which he was confined. The line of thought which led to this conclusion can easily be followed. When it

was pointed out that Hunter or Potter had a construction which was like that of the applicant functionally, and in the respect that the results differed only in degree, and that in this respect the parts of the respective constructions, which were 'different, were nevertheless equivalent, the obvious answer was that the construction, so far as it was useful and novel, or the arrangement or combination, so far as it was new and yielded a new result, constituted patentable invention. The proposition that such a device is patentable is accompanied, however, with the corollary proposition that the claim is limited to that device, and does not cover another, and that another device, involving other construction of parts and another arrangement or combination, is also patentable, although the two are functionally equivalents.

These propositions would direct our minds to the defendant's construction in our search for the proper ruling in this case, or, in other words, to the question of infringement. The defendant, however, has introduced two other defenses, which may first be stated. One is in effect that, whatever may be the legal rights of the plaintiff, the conditions of the present case as presented demand that the plaintiff be left to the assertion of his legal rights and of their enforcement through and by his legal remedies, without recourse to equitable remedies or the aid which a chancellor might otherwise accord him.

One basis for this branch of the defense is the averred laches of the plaintiff, both in the bringing of his action and his conduct of the proceeding since the action was brought, particularly in view of the circumstances under which he acquired title to the patent. In the first place, the patent has been a dead letter from the date of its issue; no attempt having been made to manufacture under it. The patent had nearly reached the fifteenth year of its age before any rights under it were asserted. This proceeding, after having been brought, was permitted to drag itself out to such length as that the patent will have expired in all probability before the final ruling in the case is had, if either party resorts to his appellate rights. Moreover, the defendant, although a well-known watchmaker and extensively engaged in the manufacture of watches and putting out well-known and widely distributed makes of watches, made and put out the watch now averred to be an infringement of the plaintiff's patent for more than a third of a score of years before complaint was made by the plaintiff.

Another feature of the defense is that there can in no event be any successful charge of infringement, unless the claims are given a sufficiently wide scope to include the barrel mechanism of the defendant, and that, if the claims are given as broad a meaning as this, the claims are invalid, because the mechanisms embraced therein would themselves be an infringement upon the claims of the prior art. The position of the defendant nearly, if not quite, is that, if the meaning of the claims is such as that the defendant's structure could be found to be an infringement, the claims are invalid, and that if a meaning is given to the claims so as to embrace only special construction of parts and special arrangement or combination of the parts, in order to take away their conflict with the prior art, then the defendant has not trespassed upon the rights of the plaintiff, and, in any event, if the

plaintiff is found to have a legal right upon which the defendant has trespassed, the conduct of the plaintiff has been such that he should be left to the assertion of his legal rights through and by his legal remedies, and should not be accorded the extralegal and extraordinary remedies which a court of equity may in proper cases either give or withhold. The bottom basis for this latter position is the broad fact that the present plaintiff bought this patent along with the flotsam and jetsam of a defunct corporation. By so doing, he bought a lawsuit, and, although it be conceded that he thus succeeded to the legal rights of the patentee and all legal remedies for their enforcement, this only means his right to bring an action at law, and by no means carries with it a claim to the aid of a chancellor.

The prima facie validity of a patent of this general character is strengthened by the fact that the right to a patent was challenged and allowed by the Patent Office on the strength of what may, in the absence of a better term, be called the mechanical merits of plaintiff's construction. The claim of the patentee to inventive merit may therefore be well said to have passed the ordeal of the test of inspection by experts. With this finding we do not disagree, and except in a clear case would yield to the weight of such expert opinion the deference which it commands. In accordance with this attitude, all that remains for consideration is that part of the prior art which was not before the Patent Office examiners. This is reduced substantially to the Potter watch. The Patent Office had before it the Potter patent, but not the form of watch mechanism which some makes of the watch disclose. This latter is said to be an anticipation of the plaintiff's invention. One part of the proofs of such a mechanism being in existence was what is known to this record as the Peaseley watch. This fact and the the date of its existence was proven by the deposition of Peaseley. This went into the record by stipulation. Really all he knew and all he would be expected to know was that he had the watch. He did not know the mechanical details of its construction. Plaintiff, after the time limit of his rebuttal proofs had closed, took the deposition of Peaseley (as under cross-examination) to elicit the fact that he did not know the construction of the works of his watch and that it had been repaired.

Defendant refused to re-examine the witness, on the ground that this as rebuttal proof was too late. The admission or rejection of this supplemental deposition was withheld, to be disposed of as a trial question. This was because the court was impressed with the thought that the supplement to the stipulated Peaseley deposition was of no evidentiary value. We find the fact of the prior existence of Potter watches, embodying works construction as shown, with or without this additional evidence. To formally dispose of the point we might reject the Peaseley deposition offered by the plaintiff as too late in time, and as conflicting with the stipulation of what the testimony of this witness was agreed to be; but we admit it in order that the plaintiff may have the benefit of this testimony, but find the fact to be that the watch antedates the invention of the patentee and that it originally was as it now is. The differences between the Potter

exhibit construction and the Potter patented watch are not sufficiently clear, however, to warrant a finding that the former is an anticipation in the face of the Patent Office finding that the latter is not. Moreover, the plaintiff's patent has relation to factory-made watches; the Potter exhibit is a hand-made watch. The plaintiff's patent further relates to watches which may be constructed of the type of thin watches which are now the vogue, while the Potter exhibit is of the clock or chronometer type.

This difference may found a claim to invention. Globe Knitting Works v. Segal, 248 Fed. 495, —— C. C. A. —— (Court of Appeals, Third Circuit). There invention was found in a combination, including an elastic insert in a part of a union garment, as contrasted with one found in a garment not of the union type. By the same token there may be invention in a combination of parts by which a thin or other style of watch, for which a commercial demand exists, is produced, which would not be negatived by an essential element being found in another combination which produced a clock, but lacked those elements in the combination which would produce a thin watch.

There was, it is true, in the cited case a feature, hereinafter referred to as having a bearing upon the question of infringement, which probably was controlling there, which is wholly absent from the instant case. There the assertion was made that the patent rights had been sold for a sum which, in view of the character of the invention, was impressively large. This was followed with evidence of large sales, indicating an appreciative reception of the invention by users. If the sale was credited as a real sale at its face value figure, and was not merely a sale by the patentee to himself in the guise of a corporation in which he was largely interested, and if the sales were due to the invention, and were larger in volume than they would have been, had another make of garment been pushed by the same commercial methods, this recognition of the value of the invention and of the merits of the thing invented would turn the scale, if in doubtful balance, in favor of the inventor, and it was in the cited case so held.

Notwithstanding the absence of this feature here, we think the prima facie right accorded by the grant of letters patent is not overcome by the evidence of anticipation or by the attack upon the utility of the patented device. This, so far as concerns this court, disposes of this branch of the defense.

[2] The next feature of the defense is the denial of infringement. The mind untrained to the ready reception of purely mechanical ideas has difficulty in distinguishing between differences in constructions which involve only a choice of equivalent mechanical expedients and real differences in construction. As already indicated, the claims of this patent must be read as combination claims, limited to the construction described, made up of the elements which are enumerated as entering into the combination, and as including in addition only the same elements under the disguise of a different form or where the elements are mechanical equivalents. The mind may hesitate over the determination of the question. When such doubt is present, the fact

that the patent is a mere paper patent may turn the scale against infringement, as it may resolve a like doubt of validity. Viewed each as a specific construction, there would seem to be as strong a likeness between the embodied device of the plaintiff and the Potter watch as there is between the defendant's device and that of the plaintiff. If the elements entering into the construction of the latter, respectively, are mechanical equivalents, the like judgment is suggested by the contrast of the former, and the converse is just as true, that if a differentiation can be made between the former it likewise exists between the latter.

The fact that the defendant was permitted for so long to make use of its device, and that the plaintiff made no use of his own is evidence to found the finding that it was recognized by the plaintiff himself that he had a property right only in his special construction with which the device of the defendant did not conflict, and that the need for his special construction was so slight as to give it no commercial value.

We therefore read the claims of this patent in the light of the prior art and of its experiences in the Patent Office as limited in their scope to a claim to a specific construction which is not infringed by the defendant's barrel. Whatever room there may be for a difference of opinion in respect to the latter finding we think is closed to the plaintiff by the characterization of his right as one not to a patented thing but to a lawsuit. This finding and that which follows has supporting authority in many adjudged cases, to which General Electric v. Yost (D. C.) 208 Fed. 719, is a sufficient reference.

[3] We are further of opinion, and make the finding, that even if the claims be so read as that infringement should be found, the extraordinary remedies of injunction and a decree for an accounting should be denied the plaintiff, with leave to bring his action at law. The right of a patentee ordinarily to the equitable remedy of injunction gives nominal chancery jurisdiction in patent cases, and the convenience of the parties and the practical trial advantages afforded have made a resort to equity the almost universal practice. Nevertheless, we should keep in mind that neither in the view of legal nor of equitable principles is any change worked by the mere subject-matter of the litigation. Equitable remedies in patent cases, as in all others, flow from the grace of the chancellor, and are never of right, and these remedies may be denied in proper cases, although the plaintiff has the legal right to that which he claims, including the right to his legal remedies. The refusal of a chancellor to interfere involves no denial of a right. The dismissal is of the bill, and involves neither a decision upon the legal right nor a denial of any legal remedy.

The actions of neither of these parties have been such as to make this phase of the case as clear as it might be. There is proof of the writing and mailing of letters (which is evidence of their receipt) offering this patent for sale, and some evidence that such a letter was sent to the defendant, and also of a reply requesting a model. This was in January or February, 1906. In 1916 the manager of the defendant company testified (among other things) to his opinion that

the plaintiff's barrel was not a practical device. He based this upon actual tests, which he testified he had made of "similar" barrels. These tests were made about eight years before. There is a suspicious significance in these dates. Again, the defendant, in showing how long it had been putting out its make of barrels, fixes a date as early as 1907. Making due allowance for the time required to design and make the necessary tools and other preparations for a commercial output, these dates take on an added significance. Again, there is testimony of the same witness to the care taken to inform himself of the issue of all patents, and to keep in touch with all devices relating to the manufacture of watches. This was to show his familiarity with the art; but, when he came to testify in denial of the charge of having pirated the ideas of the patentee, he was positive he had never seen or heard of the patent until 1914, when formal warning against infringement was served upon the defendant. This, in connection with the features of similarity between the barrel of plaintiff and that of the defendant, also has a significance. The explanation doubtless is that when designing the defendant's barrel, or when considering the purchase of the plaintiff's patent, he did know of the latter, as he had in mind the Hunter, Potter, and other barrels, and that he determined to reject the Thalhofer design as an untried, and, to his mind, an impracticable, construction, and designed and put out his own make of barrel, having, as it does and as it was natural it would have, at least a general resemblance to the barrels of which he knew. Having rejected the Thalhofer device, the fact that he had known of it was not in his mind when testifying.

Notwithstanding this, the plaintiff does not invite criticism for putting his own interpretation upon the facts above stated, even if we do not share his suspicions. When we turn to the acts of the plaintiff, we find things done which may also have significance. Another patentee, who had with the plaintiff an interest in the McIntyre Company, wrote him a highly suggestive letter, mentioning the Thalhofer patent and that the defendant might be found to have infringed it. The defendant answered that he had known for "some time" of the infringement. This correspondence was in 1913. The plaintiff in his testimony gives the "some time" the date of 1912, when he was considering the purchase of the assets of the McIntyre Company, among which was this patent. Late in 1914 a letter was received by the plaintiff from a watchmaker, in which the writer posed as a would-be purchaser of the patent, and mentioned as one of its elements of value that it was being infringed by the defendant, a rival watchmaker. To this the plaintiff replied, thanking the writer for calling plaintiff's "attention" to the infringement, and further stating that he "had investigated" the charge and found it to be well founded. This meant, if it meant anything, that he had not before known of it. This was followed by a formal warning to the defendant to desist. Here again the explanation doubtless is that the thoughts of the plaintiff were on some way of saving something out of his investment in the McIntyre Company, and that his memory was not strongly impressed with anything relating to this patent which was only one among the

assets of the company. Certainly he did not have in mind in 1914, when he wrote the letter, what he testified he had learned in 1912. There is no proof which we have been able to find of the consideration given for the sale of the patent to the McIntyre Company. It was appraised to be of no value as part of the estate of the patentee. This fact was put in evidence by the plaintiff, who further declined to state what he had given for it.

There is, therefore, an absence in this case of the element of sale value which was present in the Globe Knitting Company Case. It is not surprising to find the defendant drawing the inference from these facts that the plaintiff had fished this patent from a rubbish heap, which had come to him along with the real assets of the McIntyre Company, and to view his warning against infringement as purely in terrorem, in the hope of inducing the settlement of a prospective lawsuit. Indeed, this purpose is almost, if not fully, avowed by plaintiff in the paper book submitted. Here, again, the real situation doubtless is that the plaintiff, being properly desirous of reducing the loss from his investment in the McIntyre Company, is seeking to test out, as he has the right to do, the value of this patent. The question before us is whether he can claim the aid of a chancellor. We have room for no more than a statement of our conclusion that his appeal should not be regarded, and of one consideration on which this conclusion may be based. The plaintiff made no use of his patented device. The defendant has most industriously promoted the sale of the alleged infringement device by advertising and otherwise, so as to build up a large and valuable trade. To enjoin the defendant (if there was time for an injunction to operate) from an enjoyment of this trade is to turn it over to the plaintiff. He would thus get, along with the proprietary right which belongs to him, a valuable trade which does not. If he had moved promptly to assert his rights, the persistence of defendant in the infringement would most surely not deprive the plaintiff of anything; but no patentee can be permitted, much less encouraged, to lie in ambush, with undisclosed rights, until a valuable trade has been built up in his patented device, and then appropriate the trade.

As has before been observed, there are other elements besides the merit of an invention which give value to a patented device. The owner of one which is untried, and whose practical working and commercial value is unknown and more or less doubtful, cannot wait until a market has been created for it before he moves to protect his patent. Ignorance of the infringement would exculpate him from the charge of laches; but it is to be supposed that a make of watch which had been on the market for years, and which had been put out by a well-known watchmaker, would be known to his competitors. Full credence is given to the statement of the plaintiff that he personally did not know of the infringement until 1912, because he is a lawyer and not a watchmaker; but this by no means proves that his predecessor in title, who was a watchmaker, did not know of it, and he bought only such rights as this predecessor had. The fact that the patent had been offered this defendant adds to the strength of the

expectation that the owner would be on the lookout for any infringement by those to whom the patent was offered. There is that justification for the suspicion entertained by the plaintiff that some use was made by the defendant of the ideas of the patentee as that neither party should recover costs against the other.

The bill is dismissed, without costs.