## JOST v. BORDEN STOVE CO.

### (District Court, E. D. Pennsylvania. March Term, 1919.)

#### No. 1909.

1. Patents ⬅227, 283(1)—No commercial use and want of knowledge no defense to infringement, but equity may intervene.

As the fact that no commercial use has ever been made of a patent does not warrant its infringement, it may, especially where it is for an improvement on an existing structure, be infringed by one who has no actual knowledge of its existence, and who may build up a business in the patented device at his own expense, but in such case a court of equity, by application of equitable principles, may relieve the hardship so far as may be justly done.

2. Patents ⬅283(1)—Liability of infringer of paper patent after notice.

An innocent infringer of a paper patent, who continues his infringement after notice of the patent, does so at his peril, but a denial in good faith of the rights of the patentee, though not sustained, should subject him to no harsher consequences than the payment of damages and accounting for profits accruing after notice.

3. Patents ⬅328—771,018, for improved oil-burning lamp, valid and infringed.

The Jost patent, No. 771,018, for an improved oil-burning lamp, giving effect to the presumption arising from the finding of the Patent Office, *held* to disclose invention; also *held* infringed.

In Equity. Suit by Estelle C. Jost, administratrix of the estate of John Frederick W. Jost, deceased, against the Borden Stove Company. Decree for complainant.

See, also, 262 Fed. 163.

Mark W. Collet, of Philadelphia, Pa., for plaintiff.

William Steell Jackson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case concerns letters patent No. 771,018, issued September 27, 1904, on an improved oil burning lamp.

### The Equities of the Case.

[1] The patent is a purely paper one. This fact, together with the fact that May 17, 1919, is the filing date of the bill, imply ground of suspicion of the merits of the patent. The seeming indifference of the owner may however be explained, and has been explained. The inventor, because of failing health and lack of capital, was compelled to permit his patent to lie fallow. His widow and administratrix was unable, for want of financial means, to do anything with it, other than to attempt to find some one who would buy the patent or manufacture under it. That success did not attend such efforts is not surprising. The mere fact that a patentee has made no commercial use of his claimed invention does not, of course, warrant infringement by another. When, however, the patent is for an improvement to devices which are in use, another may hit upon the same features which the patentee incorporated in his improved device, or a dealer may sell the improved device in actual ignorance of the claimed rights of the patentee. There is, of course, always the possibility that the user has learned of the im-

provement through the patent and has boldly appropriated it. In such a case the infringement would be unmitigated, but such guilt could be established only in exceptional cases. If the conduct of the user be innocent, and in ignorance of the claims of right of the patentee, a business in the patented thing may be built up at the expense of the user, the whole of which may be appropriated by the patentee. To thus subject the user to the loss of the trade, and, in addition, to mulct him in damages, or compel him to render an accounting, is at least suggestive of hardship.

### The Equitable Principles Involved.

R. S. § 4900 (Comp. St. § 9446), deals with such a situation in cases in which patented articles are on the market. The like situation is none the less real in cases of paper patents. Legislatures are able to deal with such a situation through arbitrary enactments. Courts cannot. In equitable proceedings, however, courts may meet the conditions by the application of equitable principles, and relieve the hardship, so far as may justly be done.

[2] The defendant makes the appeal to us that this be done in the instant case. There is nothing to support a finding that the defendant appropriated this invention with knowledge that it was patented. No writ of injunction can now issue because the term of the patent has expired. The only remedy which belongs to the plaintiff is her right to an accounting. To support a patentee in intentionally or otherwise laying a trap for unwary manufacturers or dealers, by standing by while the latter, unconscious of wrongdoing, were unsuspectingly building up a trade, smacks of injustice. The requirement of warning is not too onerous a cost to demand for relief. When, however, this warning has been given, the infringer is fairly put upon his mettle. His situation may still be one of difficulty and fraught with hardship.

There is no escape, however, from the necessity of calling upon him to pass on the claims of right of the patentee. If the claim be well founded, he is not justified in ignoring it. If he does ignore it, justifying himself on the plea that the claim is unfounded, he must support his plea. He should, however, be free to the assertion of any bona fide claim of right on his part. If the plea is not made in good faith, the decree may provide for such a situation. If the right of the patentee be in good faith denied, failure to sustain the denial should not be visited with harsher consequences than subjection to the payment of damages and to an accounting for profits accruing after notice of the patent. This proposition has the sanction of the adjudged cases, among which are Mosler & Co. v. Lurie, 209 Fed. 364, 126 C. C. A. 290; Safety Car v. Consolidated Car, 174 Fed. 662, 98 C. C. A. 412; Hills v. Hamilton (D. C.) 248 Fed. 499.

### Limitations of the Decree.

In the instant case the finding is made that the denial of the validity of the letters patent was made in good faith, and that any decree for damages and accounting for profits is limited to damages suffered and profits accrued since May 17, 1919.

### The Question of Validity.

[3] The "real question involved" in this cause is the validity of the patent issued to plaintiff's decedent. Validity is denied on the ground, substantially, that the patentee made no advance upon the prior art, as all which he claims to have discovered is to be found in the stoves which he claimed to have improved; that all the patentee really did was to state more clearly than had theretofore been done the principles upon which such stoves operated, or their mode of operation, or he was at the most the first one to discover and state this mode of operation. This is not as the defendant states its defense, but it is what we find to be the defense in substance. The claims in issue are 3, 4, and 5. It has time and again been pointed out that patents issue, not to give a right to monopolize principles of construction, or otherwise, which may be applied, but the making, using, and vending "things" which embody such principles, if such things be patentable. The patent application must further "claim" the patentable features of the patented thing, and these claims must be allowed by the Patent Office. Anything made by another which embodies these patented features, or what are the equivalents thereof, is an infringement.

These very trite observations are made because they have a direct bearing upon the merits of this case. Using the term in its popular sense, combustion, under the conditions with which we are dealing, always takes place above the wick. Common experience supports the averment that the flame is near enough to consume at least to the extent of the char of the wick, resulting in a caking, and the necessity of more or less frequent trimming. The old-style candle snuffers and the need for them afford an illustration. The applicant for this patent mentions this caking or coking of the wick as a defect in the stoves of the former art type. This defect he proposed to remove by the stove of his invention. The theory of its construction was to remove the flame so far from the wick that the latter was not appreciably affected. Heat was needed to generate the gas and promote its flow through the wick from the oil supply. The inventive thought was to have at least two flames; one at or near the end of the wick, of sufficient intensity to heat it so as to induce the vaporization of the oil, but not so intense as to char the wick. The other flame was that of the burning gas, which was afire at such a distance above the wick as not to affect it. There might be an intermediate small flame and another dead space. The flames differ in color from white or yellow to blue. The latter, of course, is the heating flame. We think there was patentable invention in this thought, if novel.

There is no question in this case of infringement, because of the unusual feature that the patentee never made a stove which embodied his invention, but the stove of the defendant is said to be the invention in the concrete. Having thus proposed to himself the utility purposes of his inventive problem, and hit upon the principles of operation by which these results were to be accomplished, the inventor next proceeds to describe the mode of construction of a stove built upon these principles, which in its use would achieve these purposes. The Pat-

ent Office made the finding that the inventor had succeeded, and issued to him letters patent. The plaintiff thus starts with a prima facie exclusive proprietary right to make, use, and vend stoves thus constructed.

## The Defense.

The validity of the letters patent is challenged on what are really three grounds, set forth specifically: (1) The utility purposes of the claimed invention had been fully met by the stoves already in use. There was in consequence no advance upon the prior art. (2) The principles of operation of the patented stoves are precisely those of the stoves of the prior art. All that the patentee really did was to make a more formal and perhaps a clearer statement of what those principles were, and had designed a somewhat better constructed stove. (3) A stove constructed in accordance with the teachings of the prior art is the substantial equivalent of a stove constructed in accordance with the directions of the patent. In fact, the two cannot be distinguished. This explains and takes away all the significance of the fact that the stove of the defendant so closely follows the stove of the patent that the defendant's stove has been accepted as the embodiment of the patented stove.

Boiled down, these defenses come to the defense of the invalidity of the patent for want of patentable invention, because of the lack of novelty. Tersely stated, the defense is that the defendant made the stove of the prior art and is charged with infringement. The experts of the respective parties clash just here. It would be an almost endless task to compare the two constructions, part by part, and to trace the points of difference and resemblance. Because of this we omit a discussion of the earlier patents. The exhibits in evidence show a stove of the prior art and the stove of the defendant, or, what is admittedly the same thing, the stove of the patent.

The defendant boldly challenged the comparison, asserting that there is no difference; each presenting the same combustion features of alternating small flame and dark space between the wick and the final heating flame. The plaintiff at once accepted the challenge. The actual test was made, and may at any time be repeated. There is thus given the opportunity for a visual comparison of the operations of the two stoves. Each expert saw what he had before declared was to be seen.

We find ourselves more or less in the dilemma described in the old adage as that of any one who is called upon to decide "when doctors differ." The stove of the defendant, being accepted as the stove of the patent, is beyond doubt to be preferred to the stoves before in use. In this sense it is an improvement. This advance, however, would seem to be due to skill in construction, not to invention. The color manifestations of flame are due to the relative proportions in which the oxygen of the air and the gases from the oil fluid are to be found in the mixture. There would seem to be more or less "cut and try" in regulating this.

We frankly admit ourselves to be in a state of more than doubt of whether the patentee has made any patentable invention. We are confronted, however, with the truth that the final question is one for expert judgment, and the fact that the experts of the Patent Office found inventive merit to be present in the stove of the patent. Our judgment is that this prima facie finding should not be disturbed. The findings of validity and infringement are accordingly made in favor of the plaintiff, and a decree, limited in accordance with this opinion, may be submitted.

### In re Petition for Reargument.

A petition for a reargument has been presented by the plaintiff. The test to which reference is made in the foregoing opinion is the test made during the trial of the cause and as part of the evidence, and not that made at the argument. There is, in consequence, no need for a reargument, for the reasons given.

The petition, however, is hereby directed to be filed, with leave to the defendant to answer the same, and the petition for a reargument is refused.

### Sur Motion for Reargument.

Ordinarily the disposition to be made of this motion would call for no more than the refusal of a reargument. Inasmuch, however, as the opinion filed has expressed to counsel for defendant a meaning different from that intended to be expressed, all such misunderstandings should perhaps be corrected.

1. The court made no finding that the defendant admitted infringement. The court was and still is of the view, however, that no question of infringement is involved. This we think is clear. The plaintiff is asserting that the stove of the defendant is the stove of the patent. If this be true, no question of infringement could possibly arise. The defendant is asserting that its stove is the stove of the prior art. If this be true, the claimed patent is without validity. In consequence the real question is one of validity, and not of infringement, or at least that all question of infringement becomes merged in the question of validity, and it all resolves itself into the question of whether the defendant's stove is the stove of the prior art, and, if so, it does not matter whether it is also the stove of the defendant.

2. The second ground of application for a reargument is substantially the same thing. It may be that the word "admittedly" in the sentence which follows was not happily chosen. The sentence is:

"The exhibits in evidence show a stove of the prior art and the stove of the defendant, or, what is admittedly the same thing, the stove of the patent."

The contrast or comparison here was intended to be between what the plaintiff was asserting and what the defendant arguendo was not denying, and in consequence admitting. The defendant was asserting that its stove was the stove of the prior art; the plaintiff was asserting that the same stove was the stove of the patent. There was an admission by the plaintiff that, if the stove of the defendant was the stove of the prior art, the patent was of no validity. The "admission"

was in consequence the acceptance of a logical conclusion, and not of any fact statement. The opinion as filed contains the saving clause that the defense, as set forth in the opinion, was "not as the defendant states its defense," but as the court understood it to be in substance. We understood the real defense to be, and still so understand it, that the defendant's stove is the stove of the prior art. It therefore logically follows that, if the defendant's stove be also, as plaintiff asserts, the stove of the patent, the patent is of no validity. If the defendant be right in its reiterated assertion that its stove is the stove of the prior art, then it follows that the fact asserted by the plaintiff that it is the stove of the patent is of no significance, because it would argue, not infringement, but the invalidity of the patent.

The court was attempting to present in its strongest phase the defense that the stove of the defendant was the stove of the prior art. The "admission" was in consequence wholly arguendo. The argument of the defendant is in substance this: The stove of the defendant is the stove of the prior art. If, therefore, it be admitted, as for the purposes of presenting this argument it is admitted, that it is, as plaintiff asserts, also the stove of the patent, it follows that the patent is invalid. The remaining part of the statement of the second ground for a reargument raises the question of whether there is such a difference between the stove of the prior art and that of the patent as to justify a finding of invention is the question in the cause which the trial court characterized as doubtful and as determined by the deciding weight of the prima facie finding made by the Patent Office.

3. The third ground advanced for a reargument is that the opinion filed ignores the Ruppel patent as part of the prior art. There is doubtless to be found in the opinion no express finding of this fact. This was wholly unnecessary, because the fact was never in controversy, and every argument proceeded upon the basis that it was a fact. If the finding is of any value, we make it now. The use made of this fact in the petition for a reargument is, however, wholly unjustified. It would, of course, be true that, if the defendant's stove was the stove of the Ruppel patent, and was also, as plaintiff claimed, and as for the purposes of this argument defendant would admit, the stove of the patent, the Jost patent, as defendant's counsel argues, "could not possibly" be valid. Just here is the pinch of the whole contention. The defendant produced a stove of the Ruppel type, or at least a stove asserted to be fairly representative of the prior art, and boldly challenged a comparison between this stove of the prior art with the stove of the defendant, which the plaintiff asserted to be the stove of the Jost patent, for the purpose of showing that the stove of the defendant was the stove of the prior art. The result of this test, when the comparison was made during the trial, was to convince the trial judge that there was a difference of very great practical importance. It was just here that the defendant lost out, because the trial court was, by this test as then made, compelled to reach the finding that the defendant's stove is not the stove of the prior art, and inasmuch as the fact finding was and is made that the defendant's stove is the stove of the Jost patent, it

follows that the finding of the Patent Office that the Jost patent was an inventive advance upon the prior art must be upheld.

This leads to the two findings of validity and infringement. It is true that, when another and at the time a supposedly like test was made of a comparison between the stove of the prior art and the stove of the defendant, the differences between the two were not made clear. This induced the doubt expressed in the former opinion as to whether the Jost stove was an inventive advance upon the stove of the prior art, or merely an improved construction. This doubt was resolved in favor of the plaintiff, because of the prima facie value of the finding made by the Patent Office.

After this conclusion was reached, the plaintiff asked for a rehearing for the purpose of introducing evidence to show that the second test made at the argument did not afford a fair comparison between the stove of the prior art and the stove of the Jost patent. Inasmuch, however, as the court had already reached a conclusion favorable to the plaintiff, no need for a further hearing appeared. We feel called upon, however, to state that it was this second test which alone raised the doubt expressed in our former opinion. If this second test is out of the case the doubt is removed.

The motion for a reargument is denied. The petition for a reargument having been filed, the answer of the plaintiff thereto is also directed to be filed.